CONSOLIDATED KANSAS CITY SMELTING & REFINING COMPANY v. JOHN P. TAYLOR.

Decided January 22, 1908.

**1.—Fellow Servant—Qualifications—Opinion Testimony.**

An employee who had worked with a certain machine (in this instance, a drill press) and was familiar with its operation, could give his opinion as

to the qualifications of a fellow servant, with whose habits and characteristics he was also familiar, to work as helper about said machine.

**2.—Evidence—Specific Objection—Practice.**

Only the specific objection made to testimony on the trial will be considered on appeal.

**3.—Evidence—Fact, Not Conclusion.**

The testimony of a witness that he knew the employee in question to be a slow, careless and ignorant fellow; that he helped the witness in his work in the shop, and witness found his help to be unsatisfactory and the man himself unreliable, was not a conclusion of the witness but a statement of a fact to which the witness could testify.

**4.—Same—General Reputation.**

The answer of a witness, concerning a fellow servant, as follows: "I know his reputation among the persons working in the shop. . . . It was that of a careless person," and, "I do. Flores' reputation in said shop among the persons who worked there, was that of an incompetent worker and careless person." Held, in the light of other testimony, not subject to the objection that the testimony did not relate to the general reputation of the party in question.

**5.—Contributory Negligence—Sudden Impulse.**

Imprudent acts done on an impulse in emergencies are not negligence as matter of law. This rule applies not only to the preservation of life, but to property as well.

**6.—Master and Servant—Incompetent Servants—Evidence.**

In a suit for personal injuries, the allegation being that plaintiff was injured through the incompetence of a fellow servant, evidence considered, and held sufficient to support the finding of the jury that the servant was incompetent and that the master either knew or ought to have known it.

**7.—Assumed Risk—Incompetence of Fellow Servant—Evidence.**

Where the evidence is conflicting as to the competency of an employee, the verdict of a jury finding that the employee was incompetent, will not be set aside on the ground that the plaintiff must have known that the employee was incompetent and therefore assumed the risk of working with him. Especially when plaintiff was young and had not had the same opportunity of observing the employee as some of the witnesses.

**8.—Special Charge—Repetition—Refusal.**

A special charge, although announcing a correct proposition of law, is properly refused when the law therein contained has been given in the main charge.

**9.—Briefs—Propositions—Practice.**

An assignment of error submitted as a proposition, which is in fact not a proposition and affords a basis for a number of propositions, will not be considered on appeal.

**10.—Incompetent Evidence—Striking Out—Practice.**

The proper time to object to improper evidence is when it is offered, and the refusal of the trial court to give a requested instruction withdrawing from the consideration of the jury certain improper testimony admitted without objection, will not be cause for reversal, especially when said testimony was introduced by the complaining party.

**11.—Damages—Expectancy—Evidence.**

Upon a question as to the amount of damages in a suit for personal injuries, testimony that plaintiff had recently graduated from a high school, was

working in a subordinate position temporarily, and expected to be promoted, was not improper.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*Beall & Kemp* and *Walter H. Scott,* for appellant.—As the witness, Oscar Darr, had never seen the helper, Flores, at work around a drill press and had no opportunity to know what his character for competency as a helper around such a machine was, his testimony was manifestly the mere expression of an opinion, and it was error to admit it. St. Louis S. W. Ry. Co. v. Demsey, 40 Texas Civ. App., 398; Wells Fargo & Co. v. Boyle, 39 Texas Civ. App., 365; Kansas & G. S. L. Ry. Co. v. Scott, 1 Texas Civ. App., 4.

The act of incompetency upon the part of Flores alleged by plaintiff to have been the cause of the injuries to plaintiff was that of carelessly and negligently withdrawing the hammer handle from the wheel guard while plaintiff was drilling a hole in it, and the question of any supposed physical defect or inability in the helper Flores was wholly irrelevant, and the evidence should not have been admitted. Bonnet v. G., H. & S. A. Ry. Co., 89 Texas, 76.

The statement of the witness that he had found Flores' help "unsatisfactory and found him to be unreliable" was manifestly a mere conclusion of the witness upon a simple fact to be proved, and should not have been admitted. St. Louis S. W. Ry. Co. v. Demsey, 40 Texas Civ. App., 398; Wells Fargo Co. v. Boyle, 39 Texas Civ. App., 365; Kansas & G. S. L. Ry. Co. v. Scott, 1 Texas Civ. App., 4; Clardy v. Callicoate, 24 Texas, 170; Bonnet v. G., H. & S. A. Ry. Co., 89 Texas, 76.

In order for a master to be affected with notice of the incompetency of a servant by his reputation among his fellow employes, such reputation must be shown to be general, and this witness not assuming to give the general reputation of Flores, it was error to admit his answers in evidence. Texas & Pac. Ry. v. Johnson, 89 Texas, 524; East Line & R. Ry. v. Scott, 68 Texas, 697; Southern Pac. Ry. v. Hetzer, 135 Fed. Rep., 285.

If the helper Flores was in fact incompetent as alleged, nevertheless the great preponderance of the evidence showed that such incompetency was as patent and obvious to plaintiff as it could have been to defendant at, and prior to, the time of plaintiff's injury, and that the plaintiff knew, or in the exercise of ordinary care in the performance of his duties must necessarily have acquired the knowledge, that Flores was so incompetent and the risks and dangers arising to him from working with said Flores, and he assumed the risks. Bonnet v. G., H. & S. A. Ry., 89 Texas, 76; Bonnet v. G., H. & S. A. Ry., 31 S. W., 525; Gulf, W. T. & P. Ry. Co. v. Smith, 37 Texas Civ. App., 188; Texas & P. Ry. Co. v. Johnson, 89 Texas, 524; St. Louis S. W. Ry. Co. v. Rea, 99 Texas, 58; Price v. Consumers' Cotton Oil Co., 41 Texas Civ. App., 47; Smith v. Armour & Co., 37 Texas Civ. App., 633; Gulf, C. & S. F. Ry. Co. v. Williams, 72 Texas, 164; Houston & T. C. Ry. v. Scott, 62 S. W., 1077.

*A. S. Eylar* and *J. H. Broom,* for appellee.

JAMES, Chief Justice.—Plaintiff Taylor alleged that he was the operator of appellant's drill press and with it was engaged in boring holes in a semi-circular piece of iron to be used as a wheel guard. That the press was a large and dangerous machine and required as a helper to plaintiff an alert, careful and competent man; that the helper furnished on this occasion, one Flores, was incompetent and lacking in the qualifications essential to such position; that he was sickly, weak, slow and habitually reckless and careless and was lacking in the strength, skill, competency, care and ordinary qualifications necessary to said position. That while engaged as aforesaid boring holes he stationed this man Flores to hold a hammer handle between one end of the wheel guard which he was drilling and an upright beam of the press in order to prevent the wheel guard from slipping or turning with the drill, and had commenced to bore holes in the same, when Flores carelessly and negligently withdrew said hammer handle and thereby caused the wheel guard to turn and revolve with the drill; that plaintiff, in endeavoring to prevent the consequences of such act on the part of Flores, attempted to stop the drill press, and while reaching forward in an effort to throw off the power that was running the press, was struck by said wheel guard and was seriously and permanently injured. That said injury was caused by the incompetency of Flores; that plaintiff did not know of such incompetency, but that defendant, through its officers and agents, did not use ordinary care in employing and in assigning Flores to plaintiff as helper, and that by the habitual carelessness and general reputation of said Flores for incompetency for the position of helper at the drill press, defendant knew or ought to have known of his incompetency. The prayer was for damages in the sum of $12,000. The verdict was for $2,500.

The answer embraced general demurrer and denial, and especially assumed risk; that plaintiff knew, or should have necessarily known by the exercise of ordinary care in the performance of his work, of the risks and dangers involved in working with Flores as his helper; contributory negligence of plaintiff in not avoiding contact with the revolving piece of iron; that Flores was competent; that defendant had exercised due care in employing him; and if it should appear that plaintiff's injuries were caused by the negligence of Flores, it was the negligence of a fellow servant, and finally that plaintiff's injuries, if any, were the result of unavoidable accident against which defendant could not guard by care or foresight.

Under appellant's first assignment are two propositions. They are, substantially, that as the witness Darr testified he had never seen Flores at work around a drill press and had no opportunity to know his character for competency, and had no knowledge of his competency as helper on such a machine, he was not qualified to testify to his unfitness as a helper in such work, and his testimony was the mere expression of opinion.

Darr's testimony was that he had run a drill press at the G. H.

over a year and handled this particular drill press before Taylor took it, about a month and a half. That he had had about three years experience working around machines and machine shops. That he knew Flores and had known him about three months, and he worked for witness as helper in other things, but not in connection with a drill press. He testified that it took a reliable man as helper in that work and a strong man. He testified that Flores was careless; that he turned things loose when told to hold them; you could not depend on him because he would turn things loose; that he was kind of sickly; that he was habitually careless; that witness considered himself able from his experience and knowledge of Flores to tell whether or not Flores was a competent person for the position of helper on a drill press, and that in his opinion he was incompetent for the place.

The witness qualified himself to speak as an expert in connection with labor on drill presses, and his knowledge of this and of Flores was sufficient to enable him to testify as he did. It was not essential that he should have had experience with him, or had seen him, at work about drill presses. The witness knew the habits and qualifications of Flores, and stated what they were; he knew what was necessary to constitute a competent helper, about drill presses, and his testimony, if opinion, would be admissible, but it looks to us more in the nature of testimony of a fact.

The second assignment raises a question as follows: The witness Ross Darr in answer to an interrogatory stated: "No; Flores was not a competent person to fill the position of helper to an operator of said machine; he was unable physically to perform the duties of helper on said machine; he was weak and slow; the work required a quick, able-bodied man." The objection to this was that it was not the proper manner to prove incompetency, and because it calls for the mere opinion of the witness, and because evidence of physical defects is not evidence of incompetency. The objection was overruled, and appellant now makes the proposition here that that testimony ought to have been ruled out, for the reason that the act of incompetency alleged by plaintiff was the careless and negligent withdrawing of the hammer handle and the question of physical defect or inability in the helper Flores was wholly irrelevant. This specific reason why the testimony should have been excluded was not presented in the objection as made in the District Court, and can not be indulged here.

The third raises a question upon the following answer of said witness Ross Darr: "I know him (Flores) to be a careless and ignorant fellow, slow; he helped me in my work in the shop, and I found his help to be unsatisfactory and found him to be unreliable." There were other things embraced in this answer of the witness, but the court struck them out, leaving what is above quoted. Then appellant objected to what was left, upon the grounds that it was not the proper way to prove incompetency; that it expresses an opinion of the witness, and does not show what the party's general reputation was for competency or carelessness. The matter is brought here

upon a single proposition, to which of course appellant is confined. It is this: "That the statement of the witness that he had found Flores' help unsatisfactory and found him to be unreliable was manifestly a mere conclusion of the witness upon. a simple fact to be proved and should not have been admitted." It is plain to us that the statement was not an opinion at all, but the statement of a fact, and there is no force in the proposition made.

The fourth assignment raises a question upon the following answers of same witness, Ross Darr: "I know his (Flores') reputation among the persons working in the shop where the said Taylor is said to have received said injuries; it was that of a careless person." "I do. Flores' reputation in said shop, among the persons who worked there, was that of an incompetent worker and careless person." The objection was, this did not show what his general reputation was. This witness and others showed that Flores had been working in the shops some months. The answers evidenced a general reputation among the persons with whom such a reputation would naturally grow up in the time Flores was among them, and was admissible to prove such fact. Appellant says: "This witness does not assume to testify as to the general reputation of Flores among his fellow servants, and that the reputation he speaks about is not general is manifest by his further answer; that his opinion as to Flores' incompetency is derived from his observation and from what he had heard a great many other workmen in the shops say." The answers objected to evidenced what was a general reputation, and the objection made to them was properly overruled when made. The latter part of what is just quoted, which refers to a further answer, seems to us not to impair the effect of the answers as proof of a general reputation. However, if it did, the assignment ought not to be sustained, because the objection, as presented to the trial judge, was to the very answers objected to, without reference to other answers. Appellant is not presenting the point here as it was presented to the judge.

The fifth assignment is that the evidence conclusively showed that plaintiff's injury was caused by his own act in placing himself in front of the revolving wheel guard, and this was contributory negligence. There was testimony of the following facts: Plaintiff put the helper Flores to work holding. the wheel guard in place on the table of the machine, by holding a hammer handle between it and the main upright of the machine, to keep it from revolving while he was operating the machine by steam to drill holes in it. This course was safe if the hammer handle was held there, and there was also proof that it was customary to do the work in that way, and the evidence indicated that it was done in that way within the knowledge of the foreman. We state all this because appellant, under the assignment, contends that the table was equipped with grooves and holes by means of which clamps could be bolted on top of the piece to be drilled and thereby fix it so as to keep it from revolving. This was a fact. Referring, however, to these grooves and bolts the witness Oscar Darr testified that "straight pieces it will hold sufficient to drill holes, take a curved piece where

it is pretty nearly impossible to clamp it, then you are given a helper to hold while it is being drilled." The witness Cotter testified that in 1901 (when this event occurred) it was customary to have helpers to hold these curved pieces. That is often the way it is done. It happened very often. The foreman was around there a good deal. We think the testimony of Cotter alone was sufficient to show there was no negligence as a matter of law in Taylor's prosecuting the work with Flores holding the plate in place with a hammer handle.

As to plaintiff being reckless in reaching out for the lever to stop the machine at the instant he saw that Flores had released the hammer handle, we have the following testimony: Plaintiff testified he was holding the drill as he had to do, when he observed that Flores had released it, the effect of which was to set the piece to revolving; that he did not have time to consider things. "Just as soon as I saw it was loose I saw it would do damage and I reached for the lever. It was my business to stop the drill as soon as I could. I did not have time to consider the matter. I supposed my business was to keep it from breaking the machine. I did not know it would strike me. I never considered the matter at all as to whether it would or not; of course, if I had stopped and looked at it for a few minutes and considered it, I might have looked upon it that way. It was done on the spur of the moment." We should in this connection mention the fact that plaintiff could have gone around the machine and used the lever, without reaching over to grasp it.

If it was his duty to stop the machine in order to protect it from breaking, and he acted impulsively upon the spur of the moment, without time to reflect, he was not necessarily guilty of contributory negligence, because he did not pursue the wiser course of going around the machine to stop it. San Antonio & A. P. Ry. v. McDonald, 31 S. W. Rep., 72.

Acts done in emergencies, on an impulse, are not negligence as a matter of law. This rule is admitted to apply to the protection of life. But it applies as well where the duty devolves on the party to protect the employer's property. Texas & Pac. Ry. v. Carter, 7 Texas Ct. Rep., 94; Weatherford, M. W. & N. W. Ry. v. Duncan, 32 S. W. Rep., 878. The case of Jones v. Galveston, H. & S. A. Ry., 11 Texas Civ. App., 40, is cited by appellant. In that case there was no sudden emergency or appearance of danger, and there was no occasion for confusion of mind or any impulse on the part of Jones to rise up from where he was sitting and place himself in contact with the moving brake handles.

The sixth assignment complains of the following charge: "You are instructed in connection with the main charge that if you believe from a preponderance of the evidence that the plaintiff was injured by being struck in the face by a wheel guard that was revolving on the body of the drill press because of the carelessness, if any, of one Flores in withdrawing the hammer handle from the position where plaintiff had directed him to hold the same, if such was the case, and that the revolving of the said wheel guard would

have led an ordinarily prudent man to believe that same would injure the property of the defendant, and that it was his duty to protect the property of the defendant, and that the plaintiff did so believe, and that the said danger, if any, or situation, came upon plaintiff so suddenly and unexpectedly that he had not time for reflection or consideration, and that he acted upon the impulse of the moment in an effort to prevent danger, if any, threatened to said property, if he so acted, by throwing off the lever that would stop the said drill press, and that a person of ordinary prudence under the same or like circumstances would have done as the plaintiff did in throwing said lever and so placed himself in danger, then and in that event you should find the plaintiff was not guilty of contributory negligence in so throwing or attempting to throw said lever."

The propriety of this charge, upon the facts, is shown by the discussion under the fifth assignment. There is a proposition under this assignment that there being no allegation in plaintiff's pleading sufficient to raise such issue, the charge should not have been given. There was this allegation: "That plaintiff, as was his duty, in endeavoring to prevent the consequences of the negligence of Flores, immediately attempted to stop said drill press and while reaching forward in his effort to throw off the power that was running the press, was struck by said wheel guard without any fault on his part."

Under the seventh and eighth assignments appellant presents this proposition: "The great preponderance of the evidence showed that the helper Flores was in fact competent for the duties of helper, and the evidence entirely failed to support a verdict based on his incompetency." Also the proposition: "Even if the evidence had been sufficient to show that Flores was incompetent, there was no evidence to show that defendant had in any degree been negligent in originally employing him and no evidence to show that it had any notice of such incompetency, or was in any way negligent in retaining him in its employ."

There was testimony that it required a strong, quick and careful man to be helper. That Flores was sickly, slow and habitually careless. That he had the habit of turning things loose when told to hold them, that he was inattentive, could not be depended on, that he was in fact not a competent person in such position. That he had a general reputation in the shops for incompetency. Besides this, the foreman, who had given Flores to witness Bolton as a helper, stated to witness when he started him to work with him: "Here is a man who is sick; he is not able to do much, but he will do what he can; he is willing to do what he can." We think this statement answers these assignments.

Under the ninth and tenth assignments we have the proposition that if Flores was incompetent the great preponderance of the evidence showed that it was as patent and obvious to plaintiff as it could have been to defendant, and that plaintiff knew, or in the exercise of ordinary care in the performance of his duties must necessarily have acquired knowledge of that fact and of the risks and dangers of working with him, and he assumed these risks. This

proposition has for its support the fact that two of plaintiff's witnesses, Ross Darr and Arthur Bolton, testified as to the incompetency of Flores, that anyone would see it by merely observing him work, and the fact that Flores had worked with plaintiff ten days as helper. This was, however, not all the testimony. Both Darr and Bolton testified, the former that he had worked with Flores one or two months at the press, and the latter about one month, and had observed the manner in which he worked for about three months. Both had years of experience in operating such presses. Plaintiff was nineteen years old, had been working three months as a blacksmith's helper in this smelter, and this was his first experience in this line, and had been running the press about six weeks. Flores had been assigned to him about a week or ten days before the accident. This was the first time Flores had done any work in connection with the press except helping to clean up, sweeping, wiping grease off the machine, etc. Appellee argues that the testimony of Darr and Bolton, considered in its entirety, was entitled to be considered by the jury as based on having seen Flores hold things, and also in connection with their more extended experience with Flores. But we think we need not do more than refer to the argument, as the jury were not obliged to accept the statement of these witnesses on the subject, in view of testimony of defendant's witnesses, Cotter and George. The former testified that he worked in the blacksmith's shop for years; had known Flores two years; that Flores worked that long in the blacksmith shop repairing wheelbarrows and as a helper generally; had noticed him work, and had never heard of his being careless or incompetent, and thought he was all right. George, who was foreman of the shop, testified that he had occasion to see him work; he helped the witness generally and he was competent. With the evidence before them the jury were not obliged to find, in accordance with the statement of Darr and Bolton, that anyone would know of Flores' incompetency by seeing him work. Nor that in the time he had been helping plaintiff and from the character of the work he had been doing with him up to that time, that plaintiff was necessarily charged with knowledge of his incompetency.

The eleventh complains of the refusal to charge: "If you believe that the helper Flores was in fact incompetent and that the plaintiff was injured by reason thereof, yet if you believe that the plaintiff knew of his incompetency, or in the exercise of ordinary care in the performance of his duties, must necessarily have known that said helper was incompetent, then your verdict must be for the defendant."

The above was a correct instruction, applicable to the facts, and unless its equivalent was given the judgment should be reversed. St. Louis S. W. Ry. v. Rea, 99 Texas, 58. In the case just cited there was, it seems, only a general charge given on the subject of assumed risk. Here a number of specific charges were given on that subject, stating the rule as declared in Bonnet v. Galveston, H. & S. A. Ry., 89 Texas, 72; Missouri, K. & T. Ry. v. Hannig, 91 Texas, 347, such as: that plaintiff must have, in the ordinary discharge

of his duties, necessarily acquired knowledge of Flores' incompetency. Also a charge that an ordinarily prudent person would necessarily, under like circumstances, and in doing the same service as plaintiff, have learned that he was incompetent. Also to find for defendant, if the risk or danger in operating the press with Flores as helper was as open to the observation of plaintiff as to that of defendant.

The question is, were charges given substantially the same as the charge refused? We think so. It is not held in the case of Railway v. Rea that they were not. The question there was simply whether or not the charge asked was a correct one, there having been no specific charge given on the subject. The court held that it should have been given. The rule as stated in Railway v. Hannig, was declared after mature reflection. It has ever since been observed, and there is nothing in the Rea case which indicates a purpose to . overrule it. In the Bonnet case, which is referred to in the Hannig case in support of the rule, the Chief Justice, who wrote the opinions in both cases, states that an employe assumes the risks of which he has knowledge, or of which he would have learned by the exercise of that ordinary circumspection which a prudent man would use in that particular employment. Certainly, with this in the court's mind, the rule finally formulated and declared in the Bonnet case must have been deemed the equivalent expression of the same thing. We conclude that in view of the charges given, the court committed no error in refusing the one quoted.

The twelfth complains of the refusal of this charge: "If you believe that the drill press with which the plaintiff was working at the time of his injury was so constructed, or so provided with appliances, that the pieces of metal intended to be bored could be held stationary, and that had the plaintiff fastened the piece of metal that he was working upon with said appliance it would not have turned and inflicted the injury sustained by him, but that he failed to use said appliances and failed to fasten said piece of metal so that it would not turn, and instead of doing so chose to call to his assistance, or accept, the help of Flores, and that in doing so he knew and appreciated the dangers, and that doing the work as he attempted to do it was more dangerous than it would have been had he secured the piece of metal he was working upon with the appliances aforesaid so as to keep it stationary, then, he should be held to have assumed the risk of doing the work as. he did it, and your verdict should be for the defendant."

The vice in the above charge lies in the fact that it ignored the evidence which tended to show that the manner in which plaintiff did the work was an usual and approved method of doing it. If plaintiff had violated a rule in doing as he did, we could see some room for an assumed risk in that respect. If, however, he did not, and the way pursued was the usual or ordinary way, the risks he assumed were fully covered by the charges given. Besides, the plea of assumed risk was a specific one and confined itself to the risks that arose out of the incompetency of Flores, which was fully charged upon.

The thirteenth complains of the refusal of the following charge:

"You are charged that there is no presumption of negligence on the part of defendant from the mere happening of the accident and resulting injury to plaintiff, even though you should believe that such accident was caused by the negligent act of said Flores. But in order for plaintiff to recover, it is necessary for him to show by a preponderance of the evidence that said accident was proximately caused by the incompetency of said Flores and also that the defendant was guilty of negligence in employing and retaining said Flores as plaintiff's helper."

The above is submitted as a proposition. It is not a proposition in itself. It affords the basis for a number of propositions, and we do not consider it.

The fourteenth complains of the refusal of this charge: "The plaintiff and Flores were co-employes and fellow servants, and if you believe Flores was a competent servant, or that in employing or retaining him the defendant used reasonable care, but if you believe, notwithstanding the fact that he was competent, or that defendant used reasonable care in employing or retaining him, he was in this particular instance guilty of carelessness resulting in plaintiff's injury, your verdict must be for the defendant." A reading of the charges satisfies us that everything in the foregoing instruction was clearly and distinctly conveyed to the minds of the jury.

The fifteenth is that this charge ought to have been given: "You are charged that competency or incompetency can not be made to depend on race and you are not authorized to infer carelessness or incompetency from the fact that Flores was a Mexican." For the propriety of the principle embodied in this charge appellant refers to Missouri Pac. Ry. v. Christman, 65 Texas, 375. Conceding the principle, the question here is, was the refusal of said charge error in view of the conditions under which it was asked.

In Maverick v. Maury, 79 Texas, 441, the Supreme Court discusses the question. It is there stated that the proper time to object to incompetent testimony is when it is offered, but the court did not hold that the objection could not be made by means of a charge that the testimony should not be considered by the jury, but held that the refusal of such a charge in that case was not error for other reasons existing in the conditions of that case. In the present case the testimony introduced was contained in a deposition of Bolton to the effect that Flores was a fair average for what he was able to do, "for a Mexican helper, when you speak of Mexican helpers you are not talking about much." This is found in an answer to a cross-interrogatory, and it was introduced, not by plaintiff, but by defendant. We have not found, or been cited to a case in which a party has been held entitled as a matter of right to have a charge given striking out testimony deliberately introduced by himself. This testimony did not creep in inadvertently, but was in a deposition presumably on file for some time, and we do not think that defendant had the right after the trial and arguments were closed, to demand that it be relieved from a condition of the evidence created by itself.

Under the sixteenth and seventeenth assignments complaint is made of the overruling of defendant's special exception to the allegation of plaintiff, "That he had but recently graduated from the El Paso high school; that he then had no desire or intention to follow said work as a blacksmith's helper, but that he was following the same only as a temporary means of a livelihood and was studying at night," and in allowing plaintiff to prove at the trial that he had recently graduated at said high school. The allegation was in connection with the statement of plaintiff's damages, as bearing upon his endowments and qualifications, all of which the jury had the right to consider in passing upon the loss to plaintiff from the permanency of his injury. The assignments are overruled.

The eighteenth assignment is overruled. The answers of plaintiff complained of were within the scope of the allegations.

The nineteenth is also overruled; as we do not believe the damages found to be excessive. The twentieth, which complains of the failure to direct a verdict, is likewise overruled.

In conclusion, we may add that the evidence to support the findings of the jury as to the incompetency and assumed risk was not as clear and satisfactory as it might have been. But the issues were made, and there was evidence to support them, and we think the court was authorized to submit them. We find as conclusions of fact, in view of the verdict rendered, that there was evidence that Flores was an incompetent person to set to work as helper at this press, when heavy work was to·be done; that he was careless and inattentive and in the habit of turning things loose when told to hold them, and this propensity led to his turning loose this hammer handle, causing plaintiff's injury. That defendant knew, or in the exercise of ordinary care should have known, of his unfitness; that plaintiff was not guilty of contributory negligence or assumed risk in reaching for the lever to stop the machine, impelled to act suddenly and on the spur of the moment in the performance of the duty to protect his master's property; that he did not know, and in the ordinary discharge of his duties at the press did not necessarily learn of the defects in the helper, which were the proximate cause of his injury. The judgment is affirmed.

*Affirmed.*

Writ of error refused.